United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:

Thomas A Sterling,

            Debtor,
_____/

Becton, Dickinson And Company,
a New Jersey Corporation,

            Plaintiff,

v.

Thomas A Sterling,

            Defendant.
_____/

Case No. 10-76253
Chapter 7
Hon. Walter Shapero

Adv. No. 11-04034

## OPINION DETERMINING DEBT IS DISCHARGEABLE

Becton, Dickinson and Company ("Plaintiff") brought this adversary proceeding against its former employee, Debtor Thomas A Sterling ("Defendant"), seeking a determination that a debt owed to it as a result of compensation overpayments is excepted from discharge under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6). A trial was held and for the reasons set forth below, the debt is found to be dischargeable.

### Facts

Defendant was employed by Plaintiff as a production supervisor from September 2008 until he was terminated in October 2010. By the terms of his employment, Defendant was to receive a beginning base salary of $60,000.00, plus time and a half of his regular hourly rate for any overtime hours. Due to a payroll error commencing at the beginning of his employment, Defendant instead continuously received three times his hourly rate for the overtime hours he

worked, which he accepted - the erroneous overpayment totaling $54,540 until Plaintiff discovered the payroll error.

Upon this discovery, Danielle Wise, Plaintiff's human resource representative, confronted Defendant about the erroneous overpayments. During this confrontation, there is testimony that Defendant initially denied noticing anything wrong with his paychecks. He later, however, acknowledged that he knew that he was not entitled to the overpayments, but also stated he initially brought the issue to Plaintiff's attention when he noticed that something was wrong with his first paycheck and he reported this concern to Joan Wright, Plaintiff's benefit and payroll administrator. This was in October of 2008, about a month after Defendant began his employment. Ms. Wright testified that she noticed this error around the same time as well, as she was processing new hire information to make sure that correct information was entered in the system for Defendant. While Ms. Wright does not recall discussing the overpayment with Defendant, she did testify that if his paycheck was processed through the payroll before she caught the mistake, she certainly would have advised Defendant of the overpayment error.

After becoming aware of the mistake, Ms. Wright sought to correct it, by contacting the third party company that was retained by Plaintiff to manage its payroll and requesting it fix the incorrect overtime figure. Payroll service sent Ms. Wright a verification that the correction was made. She then confirmed the correct overtime figure on payroll service's verification. The correction, however, for some reason affected only that one payroll period. After this initial correction, Defendant continued to receive three times his hourly rate for overtime until Ms. Wright noticed the continuing mistake the following January of 2009, when annual increases were awarded. This time she notified Defendant of it. Despite again making another correction, the overtime figure was reversed yet again. As a result, Defendant continued to receive three

times his hourly rate until Plaintiff's offsite accountant discovered the error and brought it to Ms. Wright's attention. This time Plaintiff went over its payroll record and calculated the total amount of overpayments made to Defendant, and decided to terminate Defendant's employment for his failure to report the overpayments during the course of his employment.

Defendant filed for relief under Chapter 7 of the Bankruptcy Code on December 1, 2010. Plaintiff seeks an exception to discharge of the overpayments pursuant to § 523(a)(2)(A) based on actual fraud, § 523(a)(4) for fraud while acting in a fiduciary capacity, and § 523(a)(6) for willful and malicious injury as a result of the conversion. Plaintiff contends that Defendant knew that he was not entitled to the overpayments and, despite this knowledge, remained silent about them until Plaintiff discovered the payroll error. Plaintiff argues that conduct constituted fraud. Furthermore, Plaintiff argues that Defendant, who at the time was going through a divorce, used the money primarily for child support and an apartment.

## Jurisdiction

Bankruptcy courts have jurisdiction over all cases under title 11 and all core proceedings arising under title 11 or arising in a case under title 11. 28 U.S.C. §§ 1334, 157 (2012). Core proceedings include proceedings to determine dischargeability. Section 157(b)(2)(I).

## Discussion

**I.    Section § 523(a)(2)(A) - Actual Fraud**

Plaintiff argues that the overpayment debt owed to it should be excepted from discharge under § 523(a)(2)(A) based on actual fraud. Section 523(a)(2)(A) provides:

> (a)   A discharge under section 727 … of this title does not discharge an individual debtor from any debt--
> ***
> (2)   for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

3

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

This section is phrased in the disjunctive, meaning that false pretenses, false representation and actual fraud are three separate grounds for nondischargeability. *Mellon Bank, NA v. Vitanovich (In re Vitanovich)*, 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001); *JGR Assocs., LLC v. Brown (In re Brown)*, 442 B.R. 585, 600 (Bankr. E.D. Mich. 2011); *Morganroth & Morganroth, PLLC v. Stollman (In re Stollman)*, 404 B.R. 244, 257 (Bankr. E.D. Mich. 2009).

A Bankruptcy Appellate Panel for the Sixth Circuit adopted the Seventh Circuit Court of Appeal's position in *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. 2000), "that [§] 523(a)(2)(A) is not limited to misrepresentations and misleading omissions." *Vitanovich*, 259 B.R. at 877 (quoting *McClellan*, 217 F.3d at 893).[1] The Bankruptcy Appellate Panel held, "When a debtor intentionally engages in a scheme to deprive or cheat another of property or a legal right, that debtor has engaged in actual fraud and is not entitled to the fresh start provided by the Bankruptcy Code." *Vitanovich*, 259 B.R. at 877. To establish actual fraud, Plaintiff must show (1) a course of conduct intended to deceive; (2) justifiable reliance; and (3) proximate causation. *Brown*, 442 B.R. at 600 (citing *Field v. Mans*, 516 U.S. 59, 69 (1995)). Plaintiff has the burden

---

[1] In *Vitanovich*, 259 B.R. at 877 (internal punctuation marks, quotations, and citations omitted), the court explained:

> By distinguishing between a false representation and actual fraud, the statute makes clear that actual fraud is broader than misrepresentation. *McClellan* acknowledges that many cases have assumed that actual fraud involves a misrepresentation. However, such a restricted definition is not required, as actual fraud encompasses any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another.

4

of proving actual fraud by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). "[E]xceptions to discharge are to be strictly construed against the creditor." *Rembert v. AT&T Universal Card Servs., Inc.* (*In re Rembert*), 141 F.3d 277, 281 (6th Cir. 1998).

As noted, Plaintiff argues that Defendant's conduct in cashing the checks and keeping silent about the overpayments constitutes actual fraud or at least the required course of conduct evidencing an intent to deceive.

Plaintiff's evidence of any possible intent to deceive is Defendant's silence, which can establish the requisite intent, but only if Defendant had an affirmative duty to disclose. *See M&D, Inc. v. McConkey*, 585 N.W.2d 33, 39 (Mich. Ct. App. 1998). Under the so-called "silent fraud" doctrine, a plaintiff must prove "that the defendant intended to induce him to rely on its nondisclosure and that defendant had an affirmative duty to disclose." *Clement-Rose v. Mich. Health Care Corp.*, 538 N.W.2d 20, 23 (Mich. Ct. App. 1995); *Hord v. Envtl. Research Inst. of Mich.*, 617 N.W.2d 543, 550 (Mich. 2000); *Bergen v. Baker*, 691 N.W.2d 770, 775 (Mich. Ct. App. 2004).

First, there is credible evidence that Defendant did in fact notify Plaintiff of the error after he received his first paycheck. Ms. Wright admitted that she remembers meeting with Defendant around that time, but does not remember what was then discussed. That corrections were promptly attempted supports the fact of such notification. Second, even if Defendant did remain silent, under the cited authorities, mere silence does not rise to a level of deceptive conduct unless circumstances exist that give rise to a duty of disclosure. Query - Did Defendant have an affirmative legal or equitable duty to disclose?

5

Plaintiff argues that Defendant had a contractual duty to report any conflict of interest, which arose from a required online course, "Annual BD Business Conduct and Compliance Guide 2009 (Doing What Is Right)," that had to be completed by all of Plaintiff's employees. But the only evidence that Plaintiff produced on this point was a confirmation sheet showing that Defendant completed the course. Plaintiff did not produce the actual course guide into evidence and, as a result, the Court has no evidence of the content of the course and, therefore, no evidence that the course instructs employees in such a duty.

A duty to disclose may also arise in equity. Most cases that provide for an equitable duty to disclose under the silent fraud doctrine address circumstances where one party has superior knowledge that is not easily accessible to the other party by the exercise of due diligence. *See U.S. Fid. & Guar. Co. v. Black*, 313 N.W.2d 77, 88 (Mich. 1981); *Hand v. Dayton-Hudson*, 775 F.2d 757, 759 (6th Cir. 1985) (holding that "[t]here is an equitable duty of disclosure in a business transaction when 'circumstances surrounding a particular transaction are such as to require the giving of information") (citations omitted). The present case does not present any circumstances that would give rise to such an equitable duty. To the contrary, Plaintiff was in a position of control and had at least equal if not superior knowledge, gained from repeated, but unavailing attempts to correct the problem. Plaintiff, as Defendant's employer, had access to the payroll information and, with the exercise of reasonable diligence, could have discovered the continuing overpayments at any time.

If there was some sort of duty of disclosure that arose initially, the Court concludes that Defendant did in fact initially perform that duty. Query - If after the disclosure Plaintiff continues to make the same mistake, does that duty of disclosure newly arise after every incorrect payroll, no matter how long that goes on? or, has the fault and the responsibility for the

consequences thereafter shifted to the party which continues on a mistaken course of action after being informed of it? This Court's view is that it is the latter.

These same arguments are also relevant in analyzing required justifiable reliance, which is a required element of an "actual fraud" conclusion under § 523(a)(2)(A). Justifiable reliance "means that a plaintiff 'is required to make an investigation of his own' 'where, under the circumstances, the facts should be apparent to one of his knowledge and intelligence from a cursory glance, or he has discovered something which should serve as a warning that he is being deceived[.]'" *Brown*, 442 B.R. at 601 (quoting *Field*, 516 U.S. at 74-75). If there was reliance here, the operative reliance was that of Plaintiff relying on its own third party payroll processor to correct the situation, which was something not attributable to Defendant.

Lastly, proximate causation is also an element of Plaintiff's required proofs. Properly factually characterized here, the proximate cause of Plaintiff's loss was either the failure of the third party payroll processor to follow Plaintiff's instructions to adjust the overtime payroll figures, or the lack of clarity in those instructions, as issued by Plaintiff -- neither of which is properly traceable to Defendant.

For all of the foregoing reasons Plaintiff failed to carry its burden of showing sufficient deceit, artifice or design or trick intended to cheat Plaintiff required to establish actual fraud under § 523(a)(2)(A).

## II. Section 523(a)(4) – Fraud while acting in Fiduciary Capacity

Plaintiff next argues that the debt owed to it should be excepted from discharge under § 523(a)(4) based on "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Plaintiff bears the burden of proving by a preponderance of the evidence that

Defendant defrauded it while acting in a fiduciary capacity. *Grogan*, 498 U.S. at 291; *Brady v. McAllister* (*In re Brady*), 101 F.3d 1165, 1173 (6th Cir. 1996).

Fiduciary capacity is required for both the fraud and defalcation prongs of the statute. *Abdel-Hak v. Saad* (*In re Saad*), 319 B.R. 147, 156 n.1 (Bankr. E.D. Mich. 2004). Whether Defendant qualifies as a fiduciary for purposes of § 523(a)(4) is a question of federal law. *Commonwealth Land Title Co. v. Blaszak* (*In re Blaszak*), 397 F.3d 386, 390 (6th Cir. 2005). The Sixth Circuit has interpreted the term "fiduciary capacity" more narrowly in the context of § 523(a)(4) than the term is used in other circumstances. *Id.* at 391. The term "is limited to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *R.E. Am., Inc. v. Garver* (*In re Garver*), 116 F.3d 176, 180 (6th Cir. 1997) (holding that the "attorney-client relationship, without more, is insufficient to establish the necessary fiduciary relationship for defalcation under § 523(a)(4)"). This narrow interpretation "is consistent with the general rule that exceptions to discharge in § 523(a) must be narrowly construed." *Bd. of Trs. Ohio Carpenters' Pension Fund v. Bucci* (*In re Bucci*), 493 F.3d 635, 639-40 (6th Cir. 2007) (holding that a contractual obligation to pay employer contributions is not enough, and that "the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4)"). The interpretation is also "consistent with the Supreme Court's holding in *Davis* that '[i]t is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankruptcy has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto.'" *Bucci*, 493 F.3d at 642 (*quoting Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333 (1934)); *see also Shamrock Floorcovering Servs., Inc. v. Patel* (*In re Patel*), 565 F.3d 963, 968 (6th Cir. 2009); *Blaszak*, 397 F.3d at 391. Thus Defendant, as and by virtue

8

of being merely an employee of Plaintiff, was not a "fiduciary" within the meaning of the statute and thus cannot be held accountable under it.

As noted, most cases addressing the fraud or defalcation provision of § 523(a)(4) deal with defalcation, as opposed to fraud. The Sixth Circuit, however, has confirmed the application of this narrow interpretation of "fiduciary capacity" to cases involving fraud. In *Brady*, the creditor sought to have a debt declared non-dischargeable under § 523(a)(4), claiming that the debtor defrauded the creditor while acting in a fiduciary capacity. 101 F.3d at 1173. The Sixth Circuit held that "[t]he term 'fiduciary' under section 523(a)(4) applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity." *Id.* (internal quotation marks and citations omitted). The court, however, did not address whether the creditor proved the existence of an express trust as it found the debt non-dischargeable on other grounds. *Id.* "To establish the existence of an express or technical trust, a creditor must demonstrate: '(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary.'" *Bucci*, 493 F.3d at 640 (quoting *Blaszak*, 397 F.3d at 391-92).

In the present case, the evidence in the record does not establish the existence of an express or technical trust. First, there was no intent to create a trust. This is evident from the very nature of how this debt arose -- a payroll mistake made by a third party. Second, there is no evidence that Defendant was a trustee of the overpayments. Defendant was not designated as a trustee, and there were no duties imposed on him prior to any act of wrongdoing. Third, there is no evidence that the overpayments made to Defendant were designated as the trust *res*. Finally, there is no evidence of an existence of a definite beneficiary. The facts in this case simply do not fit the fiduciary mold.

9

Furthermore, in the event that there was an express or technical trust, the debt in question -- overpayments made to Defendant -- is not separate from the very act of alleged wrongdoing out of which the contested debt arose.

Without any evidence establishing the existence of an express or technical trust, Plaintiff fails to meet the "fiduciary capacity" element of § 523(a)(4). Given that conclusion, the Court need not address whether Defendant actually defrauded Plaintiff for purposes of § 523(a)(4). Accordingly, Plaintiff has failed to prove its claim of nondischargeability under § 523(a)(4).

### III.  Section 523(a)(6) - Willful and Malicious Injury

Plaintiff lastly argues that the debt owed to it should be excepted from discharge under § 523(a)(6). That provision excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The creditor bears the burden of proving by a preponderance of the evidence that the debt owed to it is non-dischargeable. *Grogan*, 498 U.S. at 291. Under § 523(a)(6), then, the creditor must prove that the injury caused to it was both "willful" and "malicious." *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 463 (6th Cir. 1999). "The absence of [either] one creates a dischargeable debt." *Id.* Exceptions to discharge are narrowly construed in favor of the debtor "to promote the central purpose of the discharge: relief for the honest but unfortunate debtor." *Meyer v. I.R.S.* (*In re Meyers*), 196 F.3d 622, 624 (6th Cir. 1999) (quotation and citation omitted).

In *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998), the Supreme Court determined the scope of the "willful" and "malicious" injury. In holding that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)," the Supreme Court explained in *Geiger* that the "word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional

10

*act* that leads to injury."[2] 523 U.S. at 61, 64. In *Markowitz*, the Sixth Circuit elaborated on this definition, holding that "unless 'the actor desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." 190 F.3d at 464 (internal citations omitted). Thus, "[i]n order to find a 'willful' injury under § 523(a)(6), [the Court] must determine either that (i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result form the act." *Monsanto Co. v. Trantham*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004).

The second component of § 523(a)(6) requires that the injury be "malicious." The word "'[m]alicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986). The "lack of an excuse or justification for [the debtor's] actions will not alone make [the debtor's] debt nondischargeable[.]" *Markowitz*, 190 F.3d at 466 n.10. Reckless disregard of creditors' economic interests and expectancies is also not enough; there must be reckless disregard of creditors' legal rights. *Stephens v. Morrison* (*In re Morrison*), 450 B.R. 734, 750 (Bankr. W.D. Tenn. 2011). Furthermore, the mere knowledge "that legal rights are being violated is insufficient to establish malice." *Id.* (quotation and citation omitted).

Conversion may give grounds to nondischargeability under § 523(a)(6) if the conversion is both (1) willful and (2) malicious. *Davis*, 293 U.S. at 332; *Eberhardt v. Comerica Bank*, 171 B.R. 239, 244 (E.D. Mich. 1994). Accordingly, "not every tort judgment for conversion is

---

[2] The Supreme Court noted the Eight Circuit's observation that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend the consequences of an act, not simply 'the act itself.'" *Geiger*, 523 U.S. at 61-62 (citing Restatement (Second) of Torts § 8A, Comment a, 15 (1964)).

11

exempt from discharge." *Geiger*, 523 U.S. at 63-64. A court has to consider the circumstances surrounding the conversion to determine if it falls within the scope of this exception. *Davis*, 293 U.S. at 332. An innocent or technical conversion, such as an unauthorized assumption of dominion, without more will not fall within the purview of § 523(a)(6). *Id.*

Under Michigan law, conversion is "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Northland Ins. Co. v. Stewart Title Guar. Co.,* 327 F.3d 448, 458 (6th Cir. 2003) (quotation and citations omitted). By cashing his checks and using the money, at worst Defendant was guilty of something accurately characterized as a technical conversion, if that, or an unauthorized assumption of dominion over money voluntarily paid him for wages.

In *Morrison*, 450 B.R. at 752, the parties entered into a construction contract, which provided that the homeowners would make periodic payments to the debtor-contractor and the debtor-contractor would in turn finish work on the house in a very short period of time. The debtor-creditor (1) did not begin work on the house until after the original completion date; (2) had spent over $16,000 of the homeowner's money on personal expenses before he even began the work; (3) was constantly tardy in starting labor; (4) had only completed 30% of the job during a one-year-period, where he originally agreed to complete the entire project in three months; and (5) had spent a good portion of $70,642.25 (money allocated to his labor) on personal expenses despite the fact that he only completed 30% of the project. *Id.* at 752-53. The bankruptcy court held that these actions were willful. *Id.* In addition, the bankruptcy court found that when the debtor-contractor failed to work on the project and then spent the homeowner's money on his personal expenses, "he acted in conscious disregard of his duties

12

without just cause or excuse," especially since a good portion of the homeowner's money was spent on personal expenses *prior* to beginning any work. *Morrison*, 450 B.R. at 752-53.

In *Stollman*, 404 B.R. at 265, the bankruptcy court found that conversion of 401(k) proceeds and the investment accounts proceeds was done willfully where:

> Debtor admitted in her Rule 2004 examination that she knew that the Plaintiffs claimed liens upon the 401(k) proceeds and the Investment Accounts proceeds; that she understood that she had granted liens to the Plaintiffs; that the liens entitled the Plaintiffs to receive all of the proceeds of the 401(k) and the Investment Accounts; that the Debtor received and spent the proceeds without paying the Plaintiffs their respective shares under the December Letters; and that she lied about these facts to the Plaintiffs.

The bankruptcy court further held that the conversion was malicious because "the debtor consciously and deliberately disregarded her duties under the December Letters." *Stollman*, 404 B.R. at 265. The debtor's excuse that "she needed the proceeds to pay her own personal bills and that she intended to subsequently repay the [p]laintiffs" was no just cause or excuse for her wrongful conduct.

Defendant's apparent conversion in the present case does not rise to the level of willfulness and maliciousness as presented in *Morrison* and *Stollman*. Of importance, unlike *Morrison* and *Stollman*, Plaintiff's only evidence of any potential willful injury is Defendant's failure to report the overpayments. As previously discussed, mere silence in the absence of an affirmative duty to disclose does not amount to a course of conduct intended to deceive, and rather than a willful injury by Defendant, more appropriately presents one that was primarily one of Plaintiff's own doing. Plaintiff was the one responsible for this payroll mistake and cannot now claim that Defendant acted willfully in not stopping Plaintiff from an essentially self-inflicted wound. While it might not have been morally ideal for Defendant to remain silent, his silence does not rise to the level of a willful injury under the circumstances of this case. The

13

second component of § 523(a)(6) requires the injury to be malicious or in conscious disregard of one's duties or without just cause or excuse. Here, Plaintiff cannot prove that Defendant acted in conscious disregard of one's duties because, as already stated, Plaintiff failed to provide any evidence of an existence of a duty. On the other hand, Defendant, like the debtor in *Stollman*, was perhaps without just cause or excuse in using the overpayments to pay for his child support and an apartment. Even if Defendant had no excuse or justification for using the overpayments, lack of excuse or justification for the conversion will not alone make the debtors debt nondischargeable. *See Markowitz*, 190 F.3d at 433 n.10. Because § 523(a)(6) requires that the injury be both willful and malicious, and Plaintiff cannot satisfy the willful injury component, its claim for nondischargeability is denied.

## **Conclusion**

Plaintiff did not establish that the debt owed to it was excepted from discharge by a preponderance of the evidence under 11 U.S.C. § 523(a)(2)(A), (a)(4) or (a)(6). Accordingly, Plaintiff's request that the debt owed to it is non-dischargeable is denied. An order to that effect is being contemporaneously entered.

.

**Signed on August 06, 2012**

                /s/ Walter Shapero
                **Walter Shapero**
                **United States Bankruptcy Judge**